# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| JEFFREY JOSEPH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LINCARE, INC., | ) |
| | ) |
| BRIGHTON MEDICAL SERVICES, INC. | ) |
| d/b/a Kennebunk Walk-In Clinic, Inc., | ) |
| and | ) |
| PATRICK BUTCHER, Individually, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT
## (JURY TRIAL DEMANDED)

Plaintiff Jeffrey Joseph complains against Defendants Lincare, Inc., Brighton Medical Services, Inc. d/b/a Kennebunk Walk-In Clinic, Inc., and Patrick Butcher, individually, as follows:

## PARTIES

1. Plaintiff is a resident of Waterboro, Maine.

2. Defendant Lincare, Inc. is a Delaware corporation, headquartered in Clearwater, Florida, and is registered to do business in the State of Maine.

3. Defendant operates out of six (6) locations in the State of Maine.

4. Defendant Brighton Medical Services, Inc. is a Maine nonprofit corporation which does business through seven (7) entities, including Kennebunk Walk-In Clinic, Inc., which is located in Kennebunk, Maine.

5. Defendant Patrick Butcher is an officer, director, principal, and/or owner of Brighton Medical Services, Inc. and/or Kennebunk Walk-In Clinic, and is a resident of Kennebunk, Maine.

## JURISDICTION AND VENUE

6. Jurisdiction is based upon 28 U.S.C. § 1331 as the allegations raise questions of federal law, and diversity jurisdiction under 28 U.S.C. § 1332.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) as all acts complained of occurred within the District. Under L.R. 3(b), this action is properly filed in Portland because events occurred in Cumberland and York Counties.

8. By filing a complaint with the Maine Human Rights Commission ("MHRC") and obtaining a Notice of Right to Sue, Plaintiff exhausted all requisite administrative remedies (for Counts III through V) prior to bringing this action.

## FACTUAL ALLEGATION

9. Plaintiff is a 48-year-old black man originally from Dominica.

10. Plaintiff worked as a Sales Representative at Lincare's Falmouth, Maine location from January 18, 2017 until his termination on March 27, 2017.

11. At all times, Plaintiff met or exceeded performance expectations.

12. On March 23, 2017, Plaintiff was assigned to go to Kennebunk Walk-In Clinic ("KWIC"), in Kennebunk, Maine, with instructions to try to re-establish a business relationship that had severed prior to Plaintiff's employment with Lincare.

13. While at KWIC, Defendant Patrick Butcher, the white owner of the practice, treated Plaintiff in a hostile, threatening and aggressive manner. Plaintiff

2

perceived the owner's conduct to be motivated by racial hostility.

14.     Among other things, Defendant Butcher rushed Plaintiff in the reception area of KWIC, yelling at him.  He threatened to push Plaintiff, and in doing so, got so close to Plaintiff that his spit hit Plaintiff's face.

15.     Plaintiff, fearing imminent harm, retreated and exclaimed for Butcher not to hit him.

16.     Following the incident, Plaintiff contacted his supervisor at Lincare, Dennis Lizotte, to report what had happened.  He told his supervisor that he felt he had been subjected to discrimination by Defendant Butcher based on his race.

17.     Plaintiff told Lizotte that he wanted to report the incident to the police.  Mr. Lizotte gave Plaintiff the address for the Kennebunk Police Department.  Plaintiff went to the Kennebunk Police Department and filed a complaint.

18.     In addition, Plaintiff contacted KWIC in an attempt to repair the relationship and express his distress over the way the Butcher had treated him.

19.     Defendant Butcher told Plaintiff to "stop crying, and don't call here or I will have you fired."  Butcher hung up on Plaintiff.

20.     Plaintiff returned to the Lincare office.  When he arrived, Lizotte told him that KWIC had called and complained about him.  He then told Plaintiff to "have a nice weekend, and let's hope the doctor's office does not call corporate."

21.     The same day, Defendant Butcher sent a letter to Lincare's CEO, CFO, President, and five corporate directors.  *See Exhibit 1* (3/23/17 Butcher Letter).

22.     In the letter, Defendant Butcher made several false statements about

his interaction with Plaintiff.

23. Defendant Butcher characterized Plaintiff as "angry and combative." And described him as a "6 feet 4 inches, mid-30's African American with what seem [*sic*] to be a Jamaican accent." *Id.*

24. Defendant Butcher's letter ended with an ultimatum to Lincare:

> I will wait until 3/31/17 to give you all the opportunity to respond to this incident. If we do not agree to some sort of mutually agreeable settlement for your employee's outrageous behavior I am prepared to retain legal representation to take legal action, contact the media, etc.

*Id.*

25. On Monday, March 27, 2017, Lincare's Division Manager, Tarrah Filo-Loos, contacted Lizotte to discuss the incident with KWIC. Filo-Loos wanted to know why Lizotte had not terminated Plaintiff. Lizotte explained his understanding of the situation to Filo-Loos; likely derived from what Plaintiff had told him on March 23, 2017.

26. Later that day, Plaintiff reported to work at the Lincare office in Falmouth. Lizotte approached him and told him "it doesn't look good." He told Plaintiff that his employment was terminated. Plaintiff protested. He stated that his termination was discriminatory, and that he had done nothing wrong.

27. Lincare never contacted Plaintiff for his version of events prior to terminating his employment.

28. At 4:57 p.m. on March 27, 2017, *after* Plaintiff had been terminated, Lincare's Head of Employee Relations and HR Services for Operations emailed Filo-Loos, inquiring as to whether Plaintiff was ever consulted about his version of the

4

events, or if he had been given "a chance to explain, defend, deny, etc." *See Exhibit 2 (3/27/17 Adams email to Filo-Loos).*

29. Lincare's Division Manager, Tarrah Filo-Loos, allegedly visited the Falmouth location to investigate the matter *the day after* she instructed Lizotte to terminate his employment. *See Exhibit 3 (8/21/17 Filo-Loos Statement).*

## COUNT I (v. Lincare):
### Intentional Race Discrimination/Disparate Treatment
### (42 U.S.C. § 1981)

30. Plaintiff repeats the allegations contained in Paragraphs 1 through 29.

31. Section 1981 of Title 42 of the U.S. Code ("Section 1981") provides that all persons shall have the same rights as white citizens to "make and enforce contracts" including the right to enjoy all terms and conditions of employment in a manner free from racial discrimination or harassment.

32. As a black man of Dominiquais descent, Plaintiff is a member of a class of individuals protected by Section 1981.

33. By the conduct described above, Defendant Lincare intentionally deprived Plaintiff of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges of his contractual employment relationship with Defendant Lincare, in violation of Section 1981.

34. As a result of Defendant Lincare's intentional discrimination, Plaintiff suffered adverse employment action; was denied employment opportunities, compensation, and benefits; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life sufficient to warrant an award of back

pay and compensatory damages in an amount to be proven at trial.

35. Through its discriminatory actions as alleged above, Defendant has acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling him to an award of punitive damages to be determined by a jury.

### COUNT II (v. Lincare, Inc.):
### Retaliation
### (42 U.S.C. § 1981)

36. Plaintiff repeats the allegations contained in Paragraphs 1 through 35.

37. Section 1981 prohibits an employer from retaliating against an individual because that person complained about race discrimination or opposed his employer's racially discriminatory acts or practices.

38. Plaintiff, acting at all times in good faith, opposed his employer's racially discriminatory acts and practices and disparate treatment based on race. Plaintiff was motivated to oppose and put a stop to such acts and practices.

39. Defendant was aware of Plaintiff's protected activity.

40. Plaintiff suffered adverse employment action

41. There exists a causal connection between Plaintiff's protected activity and the adverse employment action to which he was subjected.

42. As a direct and proximate result of Defendant's discriminatory and retaliatory acts, Plaintiff suffered damages in an amount to be proven at trial.

### COUNT III (v. Lincare, Inc.)
### Race Discrimination/Disparate Treatment
### (5 M.R.S. § 4572)

43. Plaintiff repeats the allegations contained in Paragraphs 1 through 42.

44. The Maine Human Rights Act ("MHRA") provides that all individuals have the right to be free from discrimination in employment based on their race and national origin, and prohibits employers from discriminating against an employee based on their race.

45. As a black man of Dominiquais descent, Plaintiff is a member of a class of individuals protected by the MHRA.

46. By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights enjoyed by white employees.

47. As a result of Defendant Lincare's discrimination in violation of the MHRA, Plaintiff suffered adverse employment action; was denied employment opportunities, compensation, and benefits; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life sufficient to warrant an award of back pay and compensatory damages in an amount to be proven at trial

48. Through its discriminatory actions as alleged above, Defendant Lincare has acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling him to an award of punitive damages to be determined by a jury.

### COUNT IV (v. Lincare)
### Retaliation
### (5 M.R.S. § 4633)

49. Plaintiff repeats the allegations contained in Paragraphs 1 through 48.

50. Section 4633 of the MHRA prohibits an employer from discriminating against an employee because he opposed the employer's unlawful acts and practices.

51. Plaintiff, acting at all times in good faith, opposed his employer's

7

racially discriminatory acts and practices and disparate treatment based on race.

52. Defendant Lincare was aware of Plaintiff's protected status and acts.

53. Plaintiff suffered adverse employment action.

54. There exists a causal connection between Plaintiff's protected activity and the adverse employment action to which he was subjected.

55. As a direct and proximate result of Defendant Lincare's acts, Plaintiff suffered damages in an amount to be proven at trial.

### COUNT V (v. Lincare)
### Retaliation
### (26 M.R.S. § 833)

56. Plaintiff repeats the allegations contained in Paragraphs 1 through 55.

57. Section 833 of the Maine Whistleblower Protection Act ("MWPA") prohibits an employer from retaliating against an employee for reporting in good faith what he reasonably believes to be a violation of state or federal laws or rules.

58. Plaintiff, acting at all times in good faith, reported and complained to his employer about racially discriminatory acts and practices and disparate treatment based on race.

59. Defendant Lincare was aware of Plaintiff's protected status and acts.

60. Plaintiff suffered adverse employment action.

61. There exists a causal connection between Plaintiff's protected activity and the adverse employment action to which he was subjected.

62. As a direct and proximate result of Defendant Lincare's unlawful acts, Plaintiff suffered damages in an amount to be proven at trial.

## COUNT VI: (v. Brighton Medical Services, Inc. and Butcher)
### Intentional Race Discrimination/Disparate Treatment
### (42 U.S.C. § 1981)

63. Plaintiff repeats the allegations contained in Paragraphs 1 through 62.

64. Section 1981 provides that all persons shall have the same rights as white citizens to "make and enforce contracts" including the right to enjoy all terms and conditions of employment free from racial discrimination or harassment.

65. As a black man of Dominiquais descent, Plaintiff is a member of a class of individuals protected by Section 1981.

66. By the conduct described above, Defendant Butcher, individually and on behalf of Brighton Medical Services, Inc. d/b/a KWIC, intentionally deprived Plaintiff of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges of his contractual employment relationship with Defendant Lincare, in violation of Section 1981.

67. As a result of Defendants Butcher's and Brighton Medical Center/KWIC's intentional discrimination, Plaintiff suffered adverse employment action; was denied employment opportunities, compensation, and benefits; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life sufficient to warrant an award of back pay and compensatory damages in an amount to be proven at trial.

68. Through its discriminatory actions as alleged above, Defendants have acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling him to an award of punitive damages to be determined by a jury.

### COUNT VII: (v. Brighton Medical Services, Inc. and Butcher)
### Tortious Interference with an Economic Relationship

69. Plaintiff repeats the allegations contained in Paragraphs 1 through 68.

70. Maine common law provides damages "wherever a person, by means of fraud or intimidation, procures, either the breach of a contract or the discharge of a plaintiff from an employment, which but for such wrongful interference would have continued." *MacKerron v. Madura*, 445 A.2d 670 (Me. 1982).

71. Defendant Butcher, individually and on behalf of Brighton Medical Center/KWIC, through false statements and threats of litigation, caused Plaintiff's discharge from his employment.

72. As a direct and proximate result of Butcher's statements, Plaintiff incurred damages, including job loss, underemployment, reputational harm, and unwarranted emotional and financial distress, in an amount to be proven at trial.

### COUNT VIII (v. Brighton Medical Services, Inc. and Butcher)
### Defamation/Defamation *Per Se*

73. Plaintiff repeats the allegations contained in Paragraphs 1 through 72.

74. As set forth above, Defendant Butcher, individually and on behalf of Brighton Medical Center/KWIC, made one or more false and defamatory statements concerning Plaintiff to one or more third-parties.

75. Defendants directly impugned Plaintiff's ability to properly conduct his business, trade, or profession.

76. Defendant Butcher's statements were intentional and malicious. In the alternative, Defendant Butcher's statements amount at least to negligence.

77. As a direct and proximate result of Defendants' statements, Plaintiff incurred damages, including job loss, underemployment, reputational harm, and unwarranted emotional and financial distress, in an amount to be proven at trial.

## Conclusion

WHEREFORE, based on all of the foregoing, Plaintiff respectfully requests judgment in his favor on all counts and for an award of all available legal and equitable relief, including but not limited to: compensatory and punitive damages as determined by a jury; reinstatement, or front pay in lieu of reinstatement; back pay from March 27, 2017; an award of reasonable attorney's fees; and all costs of suit.

**PURSUANT TO FED. R. CIV. P. 38(b), PLAINTIFF REQUESTS TRIAL BY JURY OF ALL CLAIMS SO TRIABLE BY RIGHT.**

**Dated:** October 24, 2018         Respectfully Submitted,

*/s/ James A. Clifford*
James A. Clifford (james@cliffordclifford.com)

*/s/ Andrew P. Cotter*
Andrew P. Cotter (andrew@cliffordclifford.com)

CLIFFORD & CLIFFORD, LLC
62 Portland Rd., Suite 37
Kennebunk, ME 04043
(207) 985-3200